# Syllabus

Chief Justice:
Stephen J. Markman

Justices:
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Kurtis T. Wilder
Elizabeth T. Clement

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

## ILIADES v DIEFFENBACHER NORTH AMERICA INC

Docket No. 154358. Argued on application for leave to appeal November 7, 2017. Decided May 23, 2018.

Steven Iliades (plaintiff) and Jane Iliades brought a products-liability action in the Oakland Circuit Court against Dieffenbacher North America Inc., alleging negligence, gross negligence, and breach of warranty after plaintiff was injured by a rubber molding press manufactured by defendant. The press was equipped with a presence-sensing device called a "light curtain" that stops the press when beams of light in front of the press opening are interrupted. Once the light curtain was no longer interrupted, the press would resume its cycle automatically. Plaintiff was injured when he attempted to retrieve parts that had fallen to the floor inside the press by reaching behind the light curtain without first placing the press into manual mode. Because of plaintiff's position behind the light curtain, the light curtain was not interrupted, the press resumed its automatic operation, and plaintiff was trapped between the two plates of the press. The court, Martha D. Anderson, J., granted summary disposition to defendant, ruling that plaintiff had misused the press given the evidence that he had been trained not to reach into the press while it was in automatic mode, knew how to place the press into manual mode, knew that the light curtain was not meant to be used as an emergency stop switch, and knew that the press would automatically begin its cycle if the light curtain was no longer interrupted. The court further ruled that plaintiff's misuse was not reasonably foreseeable because plaintiff had not presented any evidence that defendant could have foreseen that a trained press operator would crawl beyond a light curtain and partially inside a press to retrieve a part without first disengaging the press. The Court of Appeals, RONAYNE KRAUSE, P.J., and STEPHENS, J. (JANSEN, J., dissenting), reversed and remanded in an unpublished per curiam opinion issued July 19, 2016 (Docket No. 324726), holding that, regardless of whether plaintiff had misused the press, defendant could be held liable because plaintiff's conduct was reasonably foreseeable. Defendant applied for leave to appeal in the Supreme Court, which ordered and heard oral argument on whether to grant the application or take other peremptory action. 500 Mich 965 (2017).

In a unanimous opinion by Justice ZAHRA, the Supreme Court, in lieu of granting leave to appeal, *held*:

Defendant would be liable under MCL 600.2947(2) for injuries sustained by plaintiff if plaintiff's conduct constituted misuse of the press under MCL 600.2945(e) and that misuse was

reasonably foreseeable. Whether the misuse was reasonably foreseeable depends on whether defendant knew or should have known of the misuse, not on whether plaintiff was grossly negligent in operating the press. Because the majority of the Court of Appeals did not decide whether and how plaintiff misused the press, and because it did not apply the common-law meaning of reasonable foreseeability, the Court of Appeals judgment was reversed and the case was remanded to that Court to reconsider the trial court's grant of summary disposition in favor of defendant under the standards articulated in this opinion.

1. MCL 600.2947(2) provides that a manufacturer or seller is not liable in a products-liability action for harm caused by misuse of a product unless the misuse was reasonably foreseeable. This provision further states that whether there was misuse and whether that misuse was reasonably foreseeable are both legal issues to be resolved by the court. Thus, the plain language of MCL 600.2947(2) clearly sets forth a two-part test for manufacturer liability pertaining to reasonably foreseeable product misuse: in order for a manufacturer to be liable for the misuse of its product, a court must first decide whether there was misuse of the product, and, if so, the court must then decide whether the particular misuse was reasonably foreseeable by the manufacturer.

2. MCL 600.2945(e) defines "misuse" as "use of a product in a materially different manner than the product's intended use." Under this provision, "misuse" includes (1) uses inconsistent with the specifications and standards applicable to the product, (2) uses contrary to a warning or instruction provided by the manufacturer, seller, or another person possessing knowledge or training regarding the use or maintenance of the product, and (3) uses other than those for which the product would be considered suitable by a reasonably prudent person in the same or similar circumstances.

3. The phrase "reasonably foreseeable" is not defined under the statute, but the Legislature is presumed to have adopted the common-law definition of that phrase when it enacted MCL 600.2947(2). Under Michigan common law, foreseeability depends on whether a reasonable person could anticipate that a given event might occur under certain conditions. When dealing with the foreseeability of a product's misuse, the crucial inquiry is whether, at the time the product was manufactured, the manufacturer was aware, or should have been aware, of that misuse. Whether a manufacturer should have known of a particular misuse may depend on whether that misuse was a common practice, or whether foreseeability was inherent in the product.

4. The Court of Appeals majority erred by failing to squarely address whether plaintiff's conduct constituted misuse of the press under MCL 600.2945(e), which affected its reasonable-foreseeability analysis. For instance, the majority improperly framed the issue as whether it was reasonably foreseeable that press operators at plaintiff's place of employment would rely on the light curtains as exclusive safety devices. This overly broad account of misuse is inconsistent with the wording of MCL 600.2947(2), which specifically asks whether "the misuse" of the product was reasonably foreseeable. In other words, the question for purposes of foreseeability is whether defendant knew or should have known of plaintiff's particular misuse. Without deciding whether and how plaintiff had misused the press, the majority could not properly assess whether that misuse was reasonably foreseeable.

5.  The Court of Appeals erred by importing the standard applicable to criminal gross negligence into its interpretation of MCL 600.2947(2).  Had the Legislature intended to use this criminal standard for reasonable foreseeability in civil products-liability cases, as opposed to the common-law definition, the Legislature would have done so.  Because the Legislature has not plainly shown a contrary intent, the common-law meaning of "reasonably foreseeable" must apply for purposes of MCL 600.2947(2).

Court of Appeals judgment reversed; case remanded to the Court of Appeals for further proceedings.

Justice CLEMENT took no part in the decision of this case.

©2018 State of Michigan

# OPINION

Chief Justice:          Justices:
Stephen J. Markman      Brian K. Zahra
                        Bridget M. McCormack
                        David F. Viviano
                        Richard H. Bernstein
                        Kurtis T. Wilder
                        Elizabeth T. Clement

FILED May 23, 2018

S T A T E   O F   M I C H I G A N

SUPREME COURT

STEVEN T. ILIADES and JANE ILIADES,

      Plaintiffs-Appellees,

v                              No. 154358

DIEFFENBACHER NORTH AMERICA
INC.,

      Defendant-Appellant.

BEFORE THE ENTIRE BENCH (except CLEMENT, J.)

ZAHRA, J.

      This products-liability action presents a question of first impression in regard to the proper interpretation of MCL 600.2947(2).[1] That provision provides that a

---

[1] Although this Court's analysis in *Greene v A P Prod, Ltd*, 475 Mich 502; 717 NW2d 855 (2006), tangentially touched upon product misuse, that case was limited to addressing the scope of a manufacturer's duty to warn of product risks under MCL 600.2948(2).

manufacturer is not liable for harm caused by the misuse of a product unless that misuse was reasonably foreseeable.

In this case, plaintiff Steven Iliades sustained serious injuries after he reached inside a 500-ton press machine to retrieve molded rubber parts from the floor and became trapped when the press started its automatic cycle.[2] Iliades places fault with defendant Dieffenbacher North America Inc., the manufacturer of the press. If Iliades's conduct constituted misuse of the press, however, Dieffenbacher would only be liable if that particular misuse was reasonably foreseeable by Dieffenbacher.

In an unpublished, split decision, the Court of Appeals concluded that, regardless of whether Iliades misused the press, Dieffenbacher can be held liable for the harm sustained by Iliades because his conduct was reasonably foreseeable under a criminal gross-negligence standard. The Court of Appeals erred by applying that standard in this context.

The Legislature set forth a clear two-part test in MCL 600.2947(2) for manufacturer liability arising from product misuse. First, a court must decide whether there was misuse of the product. Second, if there was misuse, a court must decide whether that particular misuse was reasonably foreseeable by the manufacturer. Although the Legislature defined "misuse" in MCL 600.2945(e), it did not provide a definition for "reasonably foreseeable." Nevertheless, under longstanding principles of

---

[2] Steven Iliades's wife, Jane Iliades, is also a party in this action with an independent claim for loss of consortium, which would be derivative of her of husband's legally cognizable bodily injury. In this opinion, use of the singular "Iliades" refers to Steven only.

statutory construction, the phrase "reasonably foreseeable" must be construed in accordance with its common-law meaning. And under Michigan common law, foreseeability depends on whether a reasonable person could anticipate that a given event might occur under certain conditions. When dealing with the foreseeability of a product's misuse in particular, the crucial inquiry is whether, at the time the product was manufactured, the manufacturer was aware, or should have been aware, of that misuse.

Because the majority of the Court of Appeals did not decide whether and how Iliades misused the press, and because it improperly used a criminal gross-negligence standard to determine whether Iliades's misuse was reasonably foreseeable instead of the common-law meaning of that phrase, we reverse the judgment of the Court of Appeals and remand this case to that Court to reconsider whether the trial court's grant of summary disposition in favor of Dieffenbacher was proper under the standards articulated in this opinion.

## I. FACTS AND PROCEEDINGS

Flexible Products Company supplies molded rubber parts for the automotive industry. As of June 10, 2011, Iliades had more than a year of experience working on presses at Flexible Products. Although he usually worked on Press Number 1, that press was temporarily inoperable that day, so Iliades was operating Press Number 25, a 500-ton vertical rubber molding press machine manufactured by Dieffenbacher. The press creates injection-molded rubber parts by pressing together two large plates called "platens," which hold interchangeable molds, and then injecting rubber into the molds. Each cycle

of the press takes less than 10 minutes to complete. Upon completion, the press stops and the finished product is manually removed by the operator.

Press Number 25 is also equipped with a presence-sensing device, often referred to as a "light curtain," whereby beams of light pass in front of the opening to the press. When this light curtain is interrupted by, for example, a hand or arm crossing the light beams, the press stops its cycle. While some of the presses would have to be manually reset once the light curtain was intact and no longer interrupted, other presses, like Press Number 25, would resume their cycle automatically.

Although the presses were generally set to cycle automatically, they could also operate in manual mode. Because the presses do not always eject the rubber parts properly, causing some parts to fall to the floor of a press, operators were instructed to place a press in manual mode before reaching into the press to remove any wayward part. Operators were also instructed to use a "parts grabber" to reach into the press to remove these parts.

After returning from a break on this particular day, Iliades sought to retrieve parts that had fallen to the floor inside Press Number 25 by using his parts grabber. Iliades, however, did not place the press into manual mode before doing so. In reaching into the press, Iliades's torso and back were completely inside the press, while his right knee rested on top of the guard or metal skirting on the front of the press. Despite having his left foot still touching the floor, Iliades's body was positioned in such a way that he was behind the light curtain.

With the light curtain no longer interrupted, the press resumed its automatic operation and trapped Iliades between the two plates of the press. Iliades was able to

4

bang a tool against the side of the press and attract the attention of the foreman. After approximately 15 minutes, the press was partially disassembled, freeing Iliades. Iliades sustained serious fractures in his back and severe burns, and he continues to suffer from post-traumatic stress disorder, chronic pain, and major depression.

In 2012, Iliades filed this products-liability action against Dieffenbacher, alleging negligence, gross negligence, and breach of warranty. Following discovery, Dieffenbacher moved for summary disposition under MCR 2.116(C)(10), arguing that, pursuant to MCL 600.2945(e) and MCL 600.2947(2), Iliades's actions in climbing partway into the press constituted misuse that was not reasonably foreseeable. In response, Iliades argued that there was a genuine issue of material fact regarding whether he engaged in unforeseeable misuse of the press.

At the conclusion of the motion hearing on September 17, 2014, the trial court agreed with Dieffenbacher and granted the motion. The trial court found that Iliades misused the press, as the record evidence demonstrated that he was trained not to reach into the press while it was in automatic mode. He also knew how to place the press into manual mode, that the light curtain was not meant to be used as an emergency stop switch, and that the press would automatically begin its cycle if the light curtain was no longer interrupted. The trial court then concluded that Iliades's misuse was not reasonably foreseeable because Iliades did not present any evidence that Dieffenbacher

5

could have foreseen that a trained press operator would crawl beyond a light curtain and partially inside a press to retrieve a part without first disengaging the press.[3]

On July 19, 2016, the Court of Appeals issued an unpublished, split decision reversing the trial court.[4] The majority chose not to expressly decide whether Iliades's conduct constituted misuse, claiming instead that "the dispositive issue is whether [Iliades's] conduct was *foreseeable*."[5] Employing the criminal-law standard for distinguishing ordinary negligence from gross negligence to define foreseeability, the majority focused on whether Dieffenbacher should have reasonably expected that press operators, like Iliades, would rely on light curtains as exclusive safety devices. The majority concluded that it was common practice for operators to routinely disregard their training and rely on light curtains as the sole safety device when removing finished parts. The majority also concluded that Iliades had no reason to know that the light curtain on Press Number 25 "would be cleared if one got *between* the light curtain and the press . . . ."[6] Therefore, the majority concluded that the evidence did not show that

---

[3] Iliades filed a motion for reconsideration, which was denied in an order issued on October 9, 2014. Iliades thereafter filed a delayed application for leave to appeal with the Court of Appeals.

[4] *Iliades v Dieffenbacher North America Inc*, unpublished per curiam opinion of the Court of Appeals, issued July 19, 2016 (Docket No. 324726).

[5] *Id*. at 3. Nevertheless, the majority did recognize that "misuse," as defined under MCL 600.2945(e), includes " 'uses contrary to a warning or instruction provided by the manufacturer, seller, or another person possessing knowledge or training regarding the use or maintenance of the product' " and that Iliades acted in a manner that "appears to have been contrary to instruction provided by his employer." *Id*.

[6] *Id*. at 4.

Iliades "obviously committed gross negligence" and that it was reasonably foreseeable to Dieffenbacher that press operators would rely entirely on light curtains for safety.

In her dissent, Judge JANSEN would have affirmed the trial court's grant of summary disposition. According to Judge JANSEN, the evidence showed that Iliades misused the press by acting contrary to instructions provided by Joe Whiteside, who was an employee at Flexible Products with knowledge and training regarding the use of the press. Specifically, Whiteside instructed Iliades to never reach inside the press when it was in automatic mode. Whiteside also trained Iliades to never transgress the light curtain. Nevertheless, that is precisely what Iliades did here. Judge JANSEN also concluded that Dieffenbacher could not have reasonably foreseen Iliades's particular misuse because there was no evidence that anyone had ever suffered the type of injury that Iliades sustained as a result of partially climbing into a press and because there was no evidence that partially climbing into a press while it was in automatic mode was common practice among press operators.

Dieffenbacher applied for leave to appeal in this Court. We directed the Clerk to schedule oral argument on whether to grant the application or take other action.[7]

## II. STANDARD OF REVIEW AND RULES OF STATUTORY INTERPRETATION

Questions of statutory interpretation are reviewed de novo.[8] When interpreting a statute, this Court's primary goal is to " 'ascertain the legislative intent that may

---

[7] *Iliades v Dieffenbacher North America Inc*, 500 Mich 965 (2017).

[8] *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, 500 Mich 191, 199; 895 NW2d 490 (2017), citing *Hannay v Dep't of Transp*, 497 Mich 45, 57; 860 NW2d 67 (2014).

reasonably be inferred from the words in [the] statute.' "[9]  If the statute's language is clear and unambiguous, then the statute must be enforced as written.[10]  A necessary corollary of this principle is that a " 'court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself.' "[11]

This Court must give effect to every word, phrase, and clause in a statute, and, in particular, consider the plain meaning of the critical word or phrase as well as its placement and purpose in the statutory scheme, to avoid rendering any part of the statute nugatory or surplusage.[12]  If a statutory word or phrase is undefined, it must be accorded its plain and ordinary meaning.[13]  A legal term of art, on the other hand, must be construed in accordance with its peculiar and appropriate legal meaning.[14]  Consequently,

[9] *Covenant Med Ctr*, 500 Mich at 199, quoting *People v Couzens*, 480 Mich 240, 249; 747 NW2d 849 (2008).

[10] *Covenant Med Ctr*, 500 Mich at 199, citing *People v Gardner*, 482 Mich 41, 50; 753 NW2d 78 (2008).

[11] *Covenant Med Ctr*, 500 Mich at 199, quoting *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002).

[12] *SBC Health Midwest, Inc v City of Kentwood*, 500 Mich 65, 70-71; 894 NW2d 535 (2017).

[13] *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 492 Mich 503, 515; 821 NW2d 117 (2012), citing *Krohn v Home-Owners Ins Co*, 490 Mich 145, 155; 802 NW2d 281 (2011).

[14] *Hannay*, 497 Mich at 57, citing *In re Bradley Estate*, 494 Mich 367, 377; 835 NW2d 545 (2013); see also *Bradley Estate*, 494 Mich at 377 ("While terms must be construed according to their plain and ordinary meaning, words and phrases 'as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.' "), quoting MCL 8.3a.

when the Legislature uses an undefined term with a " 'settled, definite, and well known meaning at common law,' " that settled meaning applies " 'unless a contrary intent is plainly shown.' "[15]

## III. ANALYSIS

As part of major tort reform efforts in 1995,[16] the Legislature amended the Revised Judicature Act[17] to provide that a "manufacturer or seller is not liable in a product liability action for harm caused by misuse of a product unless the misuse was reasonably foreseeable."[18]  The statute further provides that whether there was misuse, and whether that misuse was reasonably foreseeable, are both "legal issues to be resolved by the court."[19]  Thus, the plain language of MCL 600.2947(2) clearly sets forth a two-part test for manufacturer liability pertaining to reasonably foreseeable product misuse: in order for a manufacturer to be liable for the misuse of its product, a court must first decide whether there was misuse of the product, and, if so, the court must then decide whether the particular misuse was reasonably foreseeable by the manufacturer.

---

[15] *People v March*, 499 Mich 389, 398; 886 NW2d 396 (2016), quoting *People v Covelesky*, 217 Mich 90, 100; 185 NW 770 (1921), superseded by statute on other grounds.

[16] See 1995 PA 161 and 1995 PA 249.

[17] MCL 600.101 *et seq*.

[18] MCL 600.2947(2).

[19] *Id*.

9

Turning to the first part of the test, MCL 600.2945(e) defines "misuse" as "use of a product in a materially different manner than the product's intended use."[20]  This provision defines "misuse" to include the following: (1) "uses inconsistent with the specifications and standards applicable to the product," (2) "uses contrary to a warning or instruction provided by the manufacturer, seller, or another person possessing knowledge or training regarding the use or maintenance of the product," and (3) "uses other than those for which the product would be considered suitable by a reasonably prudent person in the same or similar circumstances."[21]

The second part of the test requires a court to decide whether the particular misuse of the product was reasonably foreseeable by the manufacturer.  Unlike "misuse," "reasonably foreseeable" is not defined under the statute.  As a matter of statutory construction, however, the Legislature is presumed to have adopted the common-law definition of "reasonably foreseeable" when it enacted MCL 600.2947(2).[22]

Under Michigan common law, foreseeability depends on whether a reasonable person "could anticipate that a given event might occur under certain conditions."[23]

---

[20] MCL 600.2945(e).

[21] *Id.*

[22] *March*, 499 Mich at 398; *Hannay*, 497 Mich at 57; *In re Bradley*, 494 Mich at 377; see also *People v Moreno*, 491 Mich 38, 46; 814 NW2d 624 (2012) ("We must presume that the Legislature knows of the existence of the common law when it acts.") (quotation marks and brackets omitted).

[23] *Samson v Saginaw Prof Bldg, Inc*, 393 Mich 393, 406; 224 NW2d 843 (1975); see also *Schultz v Consumers Power Co*, 443 Mich 445, 452; 506 NW2d 175 (1993), quoting *Samson*, 393 Mich at 406; *Groncki v Detroit Edison Co*, 453 Mich 644, 668; 557 NW2d 289 (1996) (MALLETT, J., concurring in part and dissenting in part) (defining

When dealing with the foreseeability of a product's misuse in particular, the crucial inquiry is whether, at the time the product was manufactured, the manufacturer was aware, or should have been aware, of that misuse.[24] Whether a manufacturer should have known of a particular misuse may depend on whether that misuse was a common practice,[25] or if foreseeability was inherent in the product.[26]

---

"foreseeability" to similarly mean, in part, "whether the reasonable person . . . could anticipate the likelihood that a particular event would occur"), citing *Samson*, 393 Mich at 406; accord *Moore v Sky Chefs, Inc*, 79 F Appx 130, 135 (CA 6, 2003), quoting *Samson*, 393 Mich at 406. *Black's Law Dictionary* similarly defines "foreseeability" as the "quality of being reasonably anticipatable." *Black's Law Dictionary* (10th ed).

[24] See *Villar v E W Bliss Co*, 134 Mich App 116, 121; 350 NW2d 920 (1984) ("[T]he specific use to which plaintiff's employer put the machine was not *foreseeable* without *some* evidence that defendant knew or should have known of the purchaser's unsafe use.").

[25] See, e.g., *Mach v Gen Motors Corp*, 112 Mich App 158, 163; 315 NW2d 561 (1982) ("The crucial inquiries under this test [of foreseeability by the manufacturer] are whether the use made of the product was a common practice and whether the manufacturer was aware of that use."); accord *Gootee v Colt Indus, Inc*, 712 F2d 1057, 1064 (CA 6, 1983) ("Crucial inquiries in determining whether a use is foreseeable include whether the use made of the product was a common practice and whether the manufacturer was, or should have been aware, of that use."), citing *Mach*, 112 Mich App 158.

[26] See, e.g., *Portelli v I R Constr Prod Co, Inc*, 218 Mich App 591, 599; 554 NW2d 591 (1996) ("Foreseeability of misuse may be inherent in the product or may be based on evidence that the manufacturer had knowledge of a particular type of misuse."); *Van Eizenga v Straley*, unpublished per curiam opinion of the Court of Appeals, issued March 31, 1998 (Docket No. 198819), p 4, quoting *Portelli*, 218 Mich App at 599; accord *Adams v Mestek Machinery, Inc*, unpublished opinion of the United States District Court for the Eastern District of Michigan, issued November 9, 2017 (Case No. 16-cv-11764), p 8, quoting *Portelli*, 218 Mich App at 599. Although the design of a product may be enhanced with the passage of time and improvements in technology, the adequacy of a design and foreseeability of misuse is measured at the time the product is in fact manufactured, not at the time of injury.

11

Accordingly, under MCL 600.2947(2), Dieffenbacher would not be liable for Iliades's injuries caused by the misuse of the press unless that misuse was reasonably foreseeable at the time the press was manufactured. This necessarily requires a court to first decide whether Iliades's conduct constituted misuse of the press under MCL 600.2945(e). Next, under the established common-law meaning of the phrase, Iliades's alleged misuse of the press would only be "reasonably foreseeable" if Dieffenbacher could have anticipated that the "given event"—here, Iliades reaching inside the press to remove rubber parts and transgressing the light curtain while the press was in automatic mode—might occur under certain conditions. To answer this question, a court would look to the record evidence to decide whether Dieffenbacher knew or should have known of Iliades's conduct.

Although it recognized that Iliades likely misused the press under MCL 600.2945(e), the Court of Appeals majority failed to squarely address the first prong of the test. This apparently deliberate decision was problematic for several reasons. Not only did the majority disregard the Legislature's clear directive that a court must decide whether a person misused the product, it also failed to focus specifically on Iliades's conduct, which affected its reasonable-foreseeability analysis. For instance, the majority improperly framed the issue as whether it was reasonably foreseeable that press operators at Flexible Products would rely on the light curtains as exclusive safety devices. This overly broad account of misuse in this case is inconsistent with the wording of MCL 600.2947(2), which specifically asks whether "*the* misuse" of the product was reasonably

foreseeable.[27] In other words, the question for purposes of foreseeability is whether Dieffenbacher knew or should have known of Iliades's particular misuse. Without deciding whether and how Iliades misused the press, the majority could not properly assess whether that misuse was reasonably foreseeable.

Furthermore, the Court of Appeals majority does not explain why it opted to disregard the wealth of reasonable-foreseeability jurisprudence when it imported the standard applicable to criminal gross negligence into its interpretation of MCL 600.2947(2). Had the Legislature intended to use this criminal standard for reasonable foreseeability in civil products-liability cases, as opposed to the common-law definition, the Legislature would have done so. Because the Legislature has not plainly shown a contrary intent, the common-law meaning of "reasonably foreseeable" must apply for purposes of MCL 600.2947(2).

## IV. CONCLUSION

For these reasons, this Court concludes that Dieffenbacher would be liable under MCL 600.2947(2) for injuries sustained by Iliades if Iliades's conduct constituted misuse of the press under MCL 600.2945(e) and that misuse was reasonably foreseeable. Whether the misuse was reasonably foreseeable depends on whether Dieffenbacher knew or should have known of the misuse, not whether Iliades was grossly negligent in operating the press. Because the majority of the Court of Appeals did not decide whether and how Iliades misused the press, and because it did not apply the common-law

---

[27] Emphasis added.

13

meaning of reasonable foreseeability, we reverse the judgment of the Court of Appeals and remand this case to that Court to reconsider the trial court's grant of summary disposition in favor of Dieffenbacher under the standards articulated in this opinion. We do not retain jurisdiction.

Brian K. Zahra
Stephen J. Markman
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Kurtis T. Wilder

CLEMENT, J., took no part in the decision of this case.

14