# STATE OF MICHIGAN

# COURT OF APPEALS

STEVEN ILIADES and JANE ILIADES,

   Plaintiffs-Appellants,

v

DIEFFENBACHER NORTH AMERICA INC.,

   Defendant-Appellee.

UNPUBLISHED
October 16, 2018

No. 324726
Oakland Circuit Court
LC No. 12-129407-NP

ON REMAND

Before: RONAYNE KRAUSE, P.J., and JANSEN and STEPHENS, JJ.

PER CURIAM.

This matter returns to us on remand[1] from our Supreme Court with directions to expressly determine whether and how plaintiff Steven Iliades "misused" a 500-ton industrial press machine manufactured by defendant Dieffenbacher North America and whether any such misuse was "reasonably foreseeable," as those terms are meant in MCL 600.2947(2). Our Supreme Court has provided us with a definition of the latter term not defined by statute. Previously,[2] we presumed plaintiff's conduct constituted misuse of the press and proceeded to evaluate the foreseeability of that misuse. We also concluded that because foreseeability was not defined by statute, and no other definition existed that provided a sufficiently objective test for foreseeability, the next best alternative was to analogize to the distinction between ordinary and gross negligence in criminal contexts. Our Supreme Court has now set us in a different direction and has remanded the matter to us. We reach the same conclusion we reached previously, and thus we again reverse the trial court and remand for further proceedings.

The word "misuse" for purposes of the product liability statute:

---

[1] *Iliades v Dieffenbacher North America Inc*, 501 Mich 326, 341; 915 NW2d 338 (2018) (*Iliades II*).

[2] *Iliades v Dieffenbacher North America Inc*, unpublished per curiam opinion of the Court of Appeals, issued July 19, 2016 (Docket No. 324726) (*Iliades I*).

means use of a product in a materially different manner than the product's intended use. Misuse includes uses inconsistent with the specifications and standards applicable to the product, uses contrary to a warning or instruction provided by the manufacturer, seller, or another person possessing knowledge or training regarding the use or maintenance of the product, and uses other than those for which the product would be considered suitable by a reasonably prudent person in the same or similar circumstances. [MCL 600.2945(e).]

Plaintiffs never explicitly admitted that leaning into the press machine constitutes "misuse" of the press machine. Furthermore, plaintiffs make the reasonable argument that, at face value, the statute appears to absurdly construe *any* departure from explicit and formal operating instructions as "misuse." However, we are constrained by plain and unambiguous language in a statute, absurd or not. See *People v McIntire*, 461 Mich 147, 155-159; 599 NW2d 102 (1999). There is no serious dispute that plaintiff failed to fully comply with operating instructions. Consequently, while the egregiousness of that departure might be fairly debatable, we are constrained to find that plaintiff "misused" the press machine within the meaning of MCL 600.2947(2).

Our Supreme Court states that, within the meaning of the statute, "reasonably foreseeable" means "a reasonable man could anticipate that a given event might occur under certain conditions." *Samson v Saginaw Professional Bldg, Inc*, 393 Mich 393, 406; 224 NW2d 843 (1975). It also requires the specific misuse at issue to have been reasonably foreseeable at the time the product was manufactured, for reasons that might include the particular misuse being a common practice, "or if foreseeability was inherent in the product." *Iliades II*, 501 Mich at 338-339. Common sense tells us that scrupulously and exhaustively following all safety and operating instructions is not common, and indeed may even be the exception rather than the norm. It is not merely reasonably foreseeable, but in fact *inevitable* that some departure from compliance with formal guidelines or "misuse" will occur.

One fact noted in our prior opinion but absent from our Supreme Court's factual recitation is that the "light curtain" safety devices[3] installed on plaintiff's employer's presses were not original equipment; as we noted, "Defendant replaced the physical doors with light curtains because customers, including [plaintiff's employer], were 'so desperate to kept [sic] the presses in production' that they would bypass the doors, which defendant found 'scary.'" *Iliades I*, slip op at p 1. This does not, of course, prove that defendant was aware when the press was manufactured that someone would eventually lean partway inside of it. However, testimony adduced in this case noted that plaintiff's employer was not alone in incentivizing productivity.

Thus, it is clear that not only is some kind of "misuse" reasonably foreseeable, but so is a more specific "misuse" in the form of actions and processes that reduce instances of shutting

---

[3] Light curtains are safety devices that, instead of forming a physical barrier between an operator and equipment, shine multiple beams of light in parallel across an opening, much like an invisible waterfall, at a strip of light sensors. If any of the sensors detect that a light beam has been broken, presumably by a solid object passing through the opening, the light curtain will halt the equipment to which it is attached.

down the presses. Other testimony in this case highlighted the fact that although press operators were not supposed to enter a press running in automatic mode unless it had been stopped, they were also not supposed to switch the presses off except in "true emergencies." It was further generally agreed upon by the trainers that no matter what the employees were instructed to do, using the light curtain to halt the presses during part removal was sometimes the only practical option. It was known that notwithstanding the emphatic safety training, operators would commonly reach into the press before it was at a complete stop because doing so could save them 10 to 20 seconds per part retrieval operation. Whether or not press operators were supposed to rely on the light curtain to halt a press while retrieving a part, the light curtains were used for that purpose.

Consequently, our final inquiry is whether a press manufacturer should reasonably expect that a press operator will eventually lean into the interior of the press, relying upon a safety system that, perhaps ironically, otherwise worked fairly predictably. We have no reason to dispute defendant's assertion that it is unaware of any other press operators being injured in the same manner as plaintiff was injured here; however, at the most that shows that the safety features usually work, not that no one had previously entered a press. As we noted previously, there is some irony in a safety product working too well.[4] It is human nature to rely on such personal experience notwithstanding official warnings. Nevertheless, we conclude that whether the specific misuse at issue here was reasonably foreseeable depends on a genuine factual question that we cannot resolve by reviewing the record: whether it was known or reasonably anticipated by defendant that parts would fall inside the press that could not be efficiently retrieved without partially entering the press.

An electrical engineer employed by defendant testified, as a fact witness, that the press had doors on the sides and back that would stop the press if opened, but because they were access doors rather than guards, they were not "designed to go every cycle." Furthermore, opening them would turn off both the press's motor and the press's pump, and turning the pump off every five minutes would be "stupid." The press design therefore clearly anticipated regular retrieval of parts only through the front opening, where the light curtain was installed. The issuance of "parts grabbers," poles with a hand actuator at one end and a gripper mechanism at the other, indicates that parts falling inside the press was not uncommon, and we have difficulty imagining defendant to be unaware of that phenomenon. What we do not know is defendant's

---

[4] There was some testimony to the effect that Press Number 25 had a unique issue wherein the light curtain could be bypassed by getting behind it; in other words, the light curtain would "clear" if someone sufficiently thin got too close to the press. Consequently, the light curtain would not correctly detect something traversing the opening of the press. This improper operation was known, albeit surprising, to regular operators of that particular press – and plaintiff was *not* a regular operator of that press. The gravamen of plaintiff's claim is that the press should not have been able to automatically resume operation upon the light curtain clearing without manual input from an operator. Furthermore, this clearly shows that plaintiff could have had most of his body outside the press and traversing the opening at the time of the accident, which should have precluded the press from operating.

awareness of the probability that parts would fall inside the press in such a way that they could not easily be retrieved without either shutting down the press at significant productivity cost or putting a significant portion of an operator's body inside the press. We recognize that "[w]hether there was misuse of a product and whether misuse was reasonably foreseeable are legal issues to be resolved by the court." MCL 600.2947(2). However, within the standard of foreseeability articulated by our Supreme Court, we do not believe that as a panel of judges with little direct experience in mechanical design or industrial shop work, and certainly unfamiliar with the specific press at issue, that we can answer that question on this record.

In summary, we are constrained to find that plaintiff misused the press. We additionally find that misuse of the press is reasonably foreseeable, and misuse of the press specifically by bypassing safety features and unambiguous instructions at a clear risk of bodily injury in order to facilitate productivity is also reasonably foreseeable. We find a genuine question of fact whether, at the time the press was manufactured, it would have been reasonably foreseeable to defendant that entering the press to the extent plaintiff entered it, for the purpose of facilitating productivity, was reasonably foreseeable. We reiterate our prior finding that we also find it reasonably foreseeable that operators would come to rely on a safety feature that otherwise appears reliable to them, whether or not they were instructed to the contrary. We therefore again reverse the trial court and remand for further proceedings. We do not retain jurisdiction.

/s/ Amy Ronayne Krause
/s/ Cynthia Diane Stephens