# STATE OF MICHIGAN

# COURT OF APPEALS

JOSEPH AYOTTE,

      Plaintiff-Appellee,

v

DEPARTMENT OF HEALTH AND HUMAN
SERVICES,

      Defendant-Appellant.

FOR PUBLICATION
November 27, 2018
9:05 a.m.

No. 339090
Arenac Circuit Court
LC No. 17-013506-AV

Before: METER, P.J., and K. F. KELLY and GLEICHER, JJ.

METER, J.

Defendant, the Michigan Department of Health and Human Services, appeals by leave granted an order reversing defendant's determination to cancel plaintiff Joseph Ayotte's Title IV-E[1] foster-care funding. We conclude that because the temporary detention order issued against plaintiff was not an order removing him from his home and *into foster care*, the fact that this order did not include a "contrary to the welfare" finding, see 42 USC 672(a)(2)(A)(ii), does not preclude plaintiff's eligibility for Title IV-E foster-care funding. We affirm the decision of the circuit court.

Plaintiff, 16 years old at the time, engaged in domestic violence, see MCL 750.81(2), on November 10, 2014, and Arenac Circuit Judge Richard Vollbach entered a temporary detention order on November 11, 2014. Plaintiff admitted to assaulting his mother and entered a plea of admission to a delinquency petition on November 12, 2014. Judge Vollbach ordered plaintiff to serve three days in the Roscommon Juvenile Detention Center (RJDC), after which he would be "placed on intensive probation under the supervision of the juvenile officer" in the home of his mother.

However, later in the day on November 12, defendant filed a child-protection petition seeking plaintiff's removal from his mother's home, citing, among other things, her problems with substance abuse. After a plea by the mother, the court assumed jurisdiction over plaintiff on

---

[1] See 42 USC 670 *et seq.*

November 13, 2014, and specified a removal-from-the-home date of November 13, 2014. In an amended order of adjudication signed on November 14, 2014, the court ordered that plaintiff be placed with defendant for care and supervision after his "release[] from the [RJDC] on Friday, November 14, 2014[.]"

Initially, defendant determined that plaintiff was eligible for Title IV-E foster-care funding for his placement outside his mother's home. See 42 USC 670 *et seq.*[2] Thereafter, in November 2015, a Title IV-E specialist with defendant, Tiphanie Charbonneau, conducted an annual review of Title IV-E funding, and plaintiff's case was chosen at random for a specific review. Charbonneau concluded that plaintiff, "in fact, was not supposed to be IV-E eligible" because the delinquency order removing plaintiff from his home did not contain language indicating that it was contrary to plaintiff's welfare to be removed from his home.

Plaintiff's guardian ad litem sought an administrative hearing. The administrative law judge (ALJ) noted that FOM 902 of the State of Michigan Children's Foster Care Manual was at issue. FOM 902 addresses "funding determination and Title IV-E eligibility" and provides, in relevant part:

> Federal regulations require the court to make a contrary to the welfare or best interest determination **in the first signed court order prior to removing the child from his/her home** for title IV eligibility. The court order must coincide with removal of the child. This finding can be made on any court order . . .
>
> **Note:** The court can make the contrary to the welfare finding on any order as long as the determination is made.

Relying on 42 USC 672(a)(2)(A)(ii) and 45 CFR 1356.21(c), the ALJ found that "while the finding of contrary to the welfare was made in the Order After Preliminary Hearing [in the child-protection matter], the order was not a removal order as the child was already removed as clearly documented in the Order to Apprehend and Detain . . . ." The ALJ concluded that defendant "acted in accordance with Department policy when it denied continuing Title IV-E

---

[2] 42 USC 670 states:

> For the purpose of enabling each State to provide, in appropriate cases, foster care and transitional independent living programs for children who otherwise would have been eligible for assistance under the State's plan approved under part A of this subchapter (as such plan was in effect on June 1, 1995), adoption assistance for children with special needs, kinship guardianship assistance, and prevention services or programs specified in section 671(e)(1) of this title, there are authorized to be appropriated for each fiscal year such sums as may be necessary to carry out the provisions of this part. The sums made available under this section shall be used for making payments to States which have submitted, and had approved by the Secretary, State plans under this part.

funding . . . because the Court's Order to Apprehend and Detain did not have the requisite contrary to the welfare findings."

Plaintiff appealed to the circuit court, which concluded that the ALJ committed clear legal error. The circuit court entered an order reversing the ALJ's decision "for the reasons stated on the record." The court concluded on the record that the temporary detention order was not the first order of removal but, rather, was an arrest warrant. The court stated:

> There was no contemplation that the removal from the home was necessary, the purpose of the warrant was to punish, or to[] first require the juvenile to respond to the allegation that he committed a crime, the crime of domestic violence against his mother. There was no contemplation in the late hours of the evening, when Judge Vollbach reviewed the deputy's report, that removal from the home was necessary . . . .
>
> Only later when the [child-protection] petition . . . was filed did it become apparent to the [c]ourt that the issue of removal from the home for reasons having to do with the child['s] welfare, rather than to punish him, was perhaps necessary. There was a hearing on the 13th, Judge Vollbach decided that . . . staying in the home was contrary to the child's welfare, and ordered him removed, and appropriately made that finding in his order of November 13th.

The court further explained:

> [F]oster care is different from detention, and detention is for a purpose completely unrelated to foster care. And there was no reason, the statutes do not indicate, simply because a form has the possibility of checking a box, and failure to check the box means that you're forever precluded from making that finding.[3]
>
> These are essentially two different proceedings with two different purposes.
>
> The forms that are commonly used in all proceedings  many of the boxes don't apply to all of the proceedings, and the reason that it wasn't checked on November 11th is it had no bearing on the November 11th proceedings.[4]

Defendant now appeals the circuit court's ruling.

---

[3] In the November 11 order, Judge Vollbach did not check a box indicating that it was "contrary to the welfare of the juvenile to remain in the home[.]"

[4] The circuit court also awarded attorney fees and costs because it found that the position taken by defendant was "exceedingly unreasonable." Defendant did not challenge this award in its application for leave. This Court granted leave "limited to the issues raised in the application and supporting brief." *Ayotte v Dep't of Health & Human Servs,* unpublished order of the Court of Appeals, entered March 5, 2018 (Docket No. 339090).

This Court's review of circuit court decisions reversing defendant's administrative decisions is subject to the following standards of review set forth in *Grass Lake Imp Bd v Dep't of Environmental Quality*, 316 Mich App 356, 362-363; 891 NW2d 884 (2016):

> We review the circuit court's decision to determine whether it "applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the agency's factual findings." *City of Sterling Heights v Chrysler Group, LLC*, 309 Mich App 676, 681; 873 NW2d 342 (2015) (quotation marks and citation omitted). We review de novo the circuit court's interpretation and application of statutes. *Glenn v TPI Petroleum, Inc*, 305 Mich App 698, 702; 854 NW2d 509 (2014). On the other hand, an administrative agency's statutory interpretation is reviewed under the standard first enunciated in *Boyer-Campbell Co v Fry*, 271 Mich 282; 260 NW 165 (1935):
>
> > "[T]he construction given to a statute by those charged with the duty of executing it is always entitled to the most respectful consideration and ought not to be overruled without cogent reasons. However, these are not binding on the courts, and [w]hile not controlling, the practical construction given to doubtful or obscure laws in their administration by public officers and departments with a duty to perform under them is taken note of by the courts as an aiding element to be given weight in construing such laws and is sometimes deferred to when not in conflict with the indicated spirit and purpose of the legislature. [*In re Complaint of Rovas*, 482 Mich 90, 103; 754 NW2d 259 (2008) (quotation marks and citations omitted; second alteration in original), quoting *Boyer-Campbell*, 271 Mich at 296–297.]

"Respectful consideration" of an agency's statutory interpretation is not akin to "deference," at least as that "term is commonly used in appellate decisions" today. *Rovas*, 482 Mich at 108. While an agency's interpretation can be a helpful aid in construing a statutory provision with a "doubtful or obscure" meaning, our courts are responsible for finally deciding whether an agency's interpretation is erroneous under traditional rules of statutory construction. *Id*. at 103, 108.

"Title IV-E establishes federal funding to support state foster care systems and conditions funding on compliance with federal requirements." *In re Rood*, 483 Mich 73, 103; 763 NW2d 587 (2009); see also 42 USC 671(a). A state plan, to be eligible for funding, must "provide[] for foster care maintenance payments in accordance with section 672 . . . ." 42 USC 671(a)(1).[5] To be eligible for Title IV-E foster-care maintenance payments, the child must have been removed from the home of a relative "into foster care," and the removal and foster-care placement must

---

[5] "[I]n order to comply with federal requirements, [the Michigan] Legislature enacts and amends state statutes to mirror the federal scheme and now provides that Title IV-E prevails to any extent that it conflicts with state law. 2008 PA 248, § 559." *In re Rood*, 483 Mich at 104.

meet, and continue to meet, the requirements of 42 USC 672(a)(2). See 42 USC 672(a)(1).[6] 42 USC 672(a)(2) provides:

> The removal and foster care placement of a child meet the requirements of this paragraph if--
>
> **(A)** the removal and foster care placement are in accordance with--
>
> \* \* \*
>
> **(ii)** a judicial determination to the effect that continuation of the home from which removed would be contrary to the welfare of the child and that reasonable efforts of the type described in section 671(a)(15) of this title for a child have been made;
>
> **(B)** the child's placement and care are the responsibility of--
>
> **(i)** the state agency administering the State plan approved under section 671 of this title;
>
> **(ii)** any other public agency with which the State agency administering or supervising he administration of the State plan has made an agreement which is in effect; or
>
> **(iii)** an Indian tribe or a tribal organization (as defined in section 679c(a) of this title) or a tribal consortium that has a plan approved under section 671 of this title in accordance with section 679c of this title; and
>
> **(C)** the child has been placed in a foster family home or child-care institution.

At issue in this case is the requirement in § 672(a)(2)(A)(ii) that the removal and foster-care placement be in accordance with a judicial determination that continuation in the home from which the child was removed would be contrary to the welfare of the child. The Code of Federal Regulations addresses this requirement. 45 CFR 1356.21(c), entitled "Contrary to the welfare determination," provides that "[t]he contrary to the welfare determination must be made in the first court ruling that sanctions (even temporarily) the removal of a child from the home. If the determination regarding contrary to the welfare is not made in the first court ruling pertaining to removal from the home, the child is not eligible for title IV-E foster care maintenance payments for the duration of that stay in foster care." Similarly, as noted, Michigan's FOM 902, entitled "Funding Determination and Title IV-E Eligibility," states, in part, that "[f]ederal regulations require the court to make a contrary to the welfare or best interest determination **in the first**

---

[6] Additionally, the child, while in the relative's home, must have met the "AFDC eligibility requirement" in 42 USC 672(a)(3). This requirement is not at issue in this appeal.

**signed court order prior to removing the child from his/her home** for title IV-E eligibility. The court order must coincide with removal of the child."

Defendant contends that the November 11, 2014, detention order constituted the first court ruling that sanctioned or pertained to the child's removal from the home. Defendant argues that § 672(a) does not limit the requirement for a "contrary to the welfare" finding to only a removal order in a child-protection proceeding, and it maintains that CFR 1356.21(c) makes no distinction between removal orders for delinquency purposes and removals for child-protection purposes. Under defendant's reading, in order for funding to be applicable, the judge entering the temporary detention order would have needed to make a contrary-to-the-welfare determination even though the sole purpose of that order was to place the child in detention for committing a criminal act.

Plaintiff argues that this reading ignores the plain language of § 672(a), the provision that CFR 1356.21(c) implements, which, according to plaintiff, only requires a court to make the requisite Title IV-E eligibility finding when a child is removed from the home *into foster care*. Plaintiff argues that funding is not dependent upon a contrary-to-the-welfare finding having been made when the detention order was issued in the present case because the detention order did not place plaintiff into foster care. We agree.

The Michigan Supreme Court recently reiterated the rules of statutory interpretation in *Iliades v Dieffenbacher North America Inc*, 501 Mich 326, 342-343; 915 NW2d 338 (2018):

> When interpreting a statute, this Court's primary goal is to " 'ascertain the legislative intent that may reasonably be inferred from the words in [the] statute.' " If the statute's language is clear and unambiguous, then the statute must be enforced as written. A necessary corollary of this principle is that a " 'court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself.' "
>
> This Court must give effect to every word, phrase, and clause in a statute, and, in particular, consider the plain meaning of the critical word or phrase as well as its placement and purpose in the statutory scheme, to avoid rendering any part of the statute nugatory or surplusage. [Citations omitted.]

As noted in *Allstate Ins Co v State Farm Mut Ins Co*, 321 Mich App 543, 559; 909 NW2d 495 (2017), "a word or phrase in a statute must not be read in a vacuum; it must be harmonized with the whole statute. *GC Timmis & Co v Guardian Alarm Co*, 468 Mich 416, 421; 662 NW2d 710 (2003). Thus, '[a]lthough a phrase or a statement may mean one thing when read in isolation, it may mean something substantially different when read in context.' *Id*. " See also *Bush v Shabahang*, 484 Mich 156, 167; 772 NW2d 272 (2009) ("Individual words and phrases, while important, should be read in the context of the entire legislative scheme.").

The plain language of 42 USC 672(a)(1) indicates that the state shall make foster-care maintenance payments on behalf of a child who has been removed from the home of a specified relative *into foster care*. The statute links the concept of "removal" to the placement setting, i.e., foster care. "Foster care means 24-hour substitute care for children placed away from their

parents or guardians and for whom the title IV-E agency has placement and care responsibility." 45 CFR 1355.20(a). Foster-care maintenance payments may be made only on behalf of an eligible child who is in a foster-family home or in a child-care institution. 42 USC 672(b)(1) and (2). In addition, the statutory scheme specifically excludes "detention facilities" from the definition of a child-care institution. 42 USC 672(c).

Plaintiff was not removed from the home and placed into foster care by way of the November 11, 2014, order; rather, he was apprehended and placed into a juvenile-detention facility because of alleged criminal acts. Consequently, the requirement that the state obtain a judicial determination that it was contrary to the welfare of the child to remain in the home for purposes of Title IV-E foster-care funding eligibility was not triggered at this point. It was the November 13, 2014, order that indicated that plaintiff's removal from the home and into care was justified based on adverse family circumstances. This order contained the requisite language and therefore plaintiff is eligible for Title IV-E foster-care funding. This reading is consistent with a decision reached by the United States Department of Health and Human Services Departmental Appeals Board in *Virginia Dep't of Social Servs*, DAB No. 2379 (2011).

Citing the Federal Register, defendant argues that there is "no distinction about the type of order in which the contrary to the welfare determination is required" and thus contends that the determination needed to be included in the temporary detention order. The full context of the cited passage is as follows:

> *Comment:* Several commenters requested that we clarify that we did not intend to consider an emergency order (sometimes referred to as a "pick-up order" or "ex-parte order") as the first court ruling for the purpose of meeting the contrary to the welfare requirements.

> *Response:* We did not make any distinction about the type of order in which the contrary to the welfare determination is required. We mean the very first court order pertaining to the child's removal from home. If the emergency order is the first order pertaining to a child's removal from home, then the contrary to the welfare determination must be made in that order to establish title IV-E eligibility. We understand that some States must change their practices and even State statutes to meet this requirement. The critical nature of this protection requires us to maintain this policy. [65 Fed Reg 4055 (January 25, 2000).]

In its earlier published notice of rulemaking, the Administration for Children and Families (ACF) proposed drawing a distinction between emergency and nonemergency removals with respect to the contrary-to-the-welfare determination. 63 Fed Reg 50075 (September 18, 1998). The proposed language was as follows:

> (c) Contrary to the welfare determination. Under section 472(a)(1) of the Act, a child's removal from the home must have been the result of a judicial determination (unless the child was removed pursuant to a voluntary placement agreement) to the effect that continuation of residence in the home would be contrary to the welfare, or that placement would be in the best interests, of the child.

(1) In nonemergency situations. When a child is removed from home pursuant to a court order, the court must make the "contrary to the welfare" determination prior to the removal of the child from home. The judicial determination must be documented in the court order which removes the child from home. If such a judicial determination is not made prior to the removal, the child is not eligible for title IV-E foster care maintenance payments for the duration of his/her stay in foster care.

(2) In emergency situations. When it is necessary to remove a child from home prior to obtaining a court order, the "contrary to the welfare" determination must be made in the first court ruling that sanctions (even temporarily) the removal of a child from home. If the determination regarding "contrary to the welfare" is not made in the first court ruling pertaining to removal from the home, the child is not eligible for title IV-E foster care maintenance payments for the duration of his/her stay in foster care. [*Id.*]

The ACF received many comments about the emergency/nonemergency distinction. 65 Fed Reg 4054 (January 25, 2000). "The comments were similar to those . . . received regarding reasonable efforts to prevent removals; that the distinction is not consistent with actual practice in many States." *Id.* The ACF stated:

We concur and have removed the distinction between emergency and non-emergency removals in the final rule. Now a State will need to obtain a contrary to the welfare determination in the first court order removing the child from the home, regardless of whether there is an emergency or non-emergency situation. [*Id.*]

Given the history of the proposed regulation, the ACF's response in 65 Fed Reg 4055 on which defendant relies should not be read as a blanket statement that any and all orders that remove a child from his or her home qualify as the first removal order for purposes of Title IV-E funding. The ACF was explaining that it had abandoned drawing a distinction between emergency and nonemergency orders in the context of removing a child into foster care.

The ACF also explained the rationale underlying the position taken in the regulation that the contrary-to-the-welfare determination be made in the first removal order:

*Comment:* Commenters overwhelmingly opposed our proposed requirement that contrary to the welfare determinations be made at the first hearing pertaining to the child's removal from home. The commenters said we were inappropriately overturning policy established by the Departmental Appeals Board (DAB) decision #1508, which permitted States up to six months to obtain a contrary to the welfare determination.

*Response:* We recognize that some States may have made changes to their contrary to the welfare policies based on this DAB decision. However, at the time that the DAB made that ruling, the Department did not have regulations addressing the timing of contrary to the welfare determinations. Therefore, we

are now taking this opportunity to clarify in regulation our policy on this issue. Our reasons for establishing this policy are set forth below:

The contrary to the welfare determination was the first of the existing protections afforded to children and their families by the Federal foster care program and has been in effect since the inception of the program in 1961 when it was operated under title IV-A. The statute then, and now, recognizes the severity of removing a child, even temporarily, from home. This protection is in place because Congress believed that judicial oversight would prevent unnecessary removals and act as a safeguard against potential inappropriate agency action. This policy is consistent with Congressional intent and stands as proposed in the NPRM. The contrary to the welfare determination must be made in the first court order sanctioning the removal of the child from home, as is explicitly required at section 472(a)(1) of the Act. [*Id*. at 4054-4055.]

The ACF's response places the entire question squarely in the context of the federal foster-care program. The ACF explains that the requirement that a determination be made that it is contrary to the welfare of a child to remain in the child's home is intended to prevent unnecessary removals and placement into substitute care. This is predicated on the recognition that removal has severe consequences, even if it is temporary. See, e.g., *O'Donnell v Brown*, 335 F Supp 2d 787, 820 (WD Mich, 2004) ("The fundamental constitutional right to family integrity extends to all family members, both parents and children."). The first-order requirement is intended to act as a check on removing a child into foster care.

What happened in the case at hand is consistent with the aims of the first-order requirement. In the early morning hours of November 11, 2014, Judge Vollbach was faced with a situation that needed immediate attention. The police had been dispatched to plaintiff's home, and both plaintiff and his mother were taken into custody. Judge Vollbach ordered that plaintiff be temporarily detained, pending a preliminary hearing. Thereafter, defendant learned that plaintiff's father was unavailable as a caregiver and also reported that "[Child Protective Services] history on [plaintiff's mother] has a consistent trend of substance abuse by [her]." Accordingly, defendant filed its petition, and the court concluded that remaining in the home was contrary to plaintiff's welfare. This timeline evidences a process that advances the goal of avoiding unnecessary removals. Defendant did not act reflexively and immediately recommend removal from the home. Rather, it undertook an investigation before filing its removal petition. As for the importance of judicial oversight, in our opinion, waiting to consider whether remaining in the home is contrary to a child's welfare until an investigation has determined the facts of the situation balances the goal of preventing unnecessary removals and placement into substitute care with the goal of looking toward what is in a child's best interests. Indeed, mandating that a court make the contrary-to-the-welfare determination before it is sufficiently apprised of the situation would actually obscure the severity of removal and turn the safeguard of judicial oversight into a means of jeopardizing the child's welfare.

Defendant cites the following question and answer taken from the Federal Child Welfare Policy Manual:

**Question 2.**

For purposes of meeting the section 472(a)(2)(A)(ii) eligibility requirement, must a temporary detention order include "contrary to the welfare" language or is it possible to consider a later delinquency adjudication order or dependency adjudication order as the removal order?

**Answer**

The statute requires that the "removal" from the home must occur as the result of a judicial determination to the effect that continuation therein would be contrary to the child's welfare.

Therefore, such a determination must be made in the order that results in the removal of the child from the home. Since the child has already been removed from his home and is in detention as the result of a temporary detention order, the later hearing order only sanctions that removal. A child would remain ineligible during the entire foster care placement if the "contrary to the welfare" determination is not made at the time of the temporary detention order. [United States Department of Health and Human Services, Administration for Children & Families, Children's Bureau, *Child Welfare Policy Manual*, § 8.3A.6, available at <https://www.acf.hhs.gov/cwpm/public_html/programs/cb/laws_policies/laws/cwpm/policy_dsp.jsp?citID=37> (accessed October 23, 2018).]

How the ACF's answer is understood depends on how the question is understood. If the question presumes that placement in a detention facility or a psychiatric hospital is a temporary step undertaken by a court who has already determined that the child should be placed in foster care, then the answer is consistent with our interpretation of 42 USC 672. Take, for example, a situation wherein a court determines that a child is a threat to himself or herself, so placement in a detention center or psychiatric hospital before placement in a foster-care home is appropriate.[7] If the question does not presume a predetermination of foster-care placement, then the answer supports the interpretation advanced by defendant. Given the purpose of Title IV-E funding, we find it reasonable to assume that the question includes the presumption. Here, Judge Vollbach did not find foster-care placement necessary until the issuance of the order on November 13, 2014, and appropriately, at that time, made a contrary-to-the-welfare finding such that Title IV-E payments are available.

Defendant also cites the following question and answer taken from the manual:

---

[7] See, e.g., *id*. at § 8.3A.1 ("A court order indicating that a child is a threat to himself satisfies the requirement of a determination that remaining in the home would be contrary to the child's welfare."). Conversely, the conclusion that temporary detention is warranted because a child might run away does not constitute a contrary-to-the-welfare determination. *Id*.

**Question 2**.

How should the State establish title IV-E eligibility for a child who is temporarily placed in a facility that is considered outside the scope of "foster care," such as a detention facility or psychiatric hospital, prior to his/her placement in foster care? When may the State begin to claim for such child if s/he is placed in foster care?

**Answer**

The State must comply with the title IV-E eligibility criteria as set forth in the statute at section 472(a) of the Social Security Act (the Act) and the implementing regulations at 45 CFR 1356.21(b), (c), and (d). The State must establish the child's eligibility at removal (which includes meeting the Aid to Families with Dependent Children eligibility requirements as in effect on July 16, 1996 and judicial determinations as to the effect that it is contrary to the child's welfare to remain in the home and that reasonable efforts have been made to prevent such removal) even for children who are not initially placed in a foster care setting. Title IV-E is an entitlement program and, as such, no flexibility exists with respect to satisfying the requisite eligibility criteria. If such eligibility criteria are not satisfied within the time frames prescribed in the regulation, the child is ineligible for title IV-E funds.

When the child is transferred to a facility that meets the requirements of section 472(c) of the Act, Federal financial participation is available from the first day of placement in the month in which all title IV-E eligibility requirements are met. [*Id.* at § 8.3A.4.]

Again, this question seems to presume that the placement in a detention facility or a psychiatric hospital is a temporary step undertaken by a court who has already determined that the child should be placed in foster care. Foster-care maintenance payments would not be reimbursable during the child's placement in a non-foster-care setting, but foster-care maintenance payments would be reimbursable from the first day of placement in the month when the child was transferred to a facility that meets the statutory requirements, as long as the other title IV-E eligibility requirements are met. Again, here there was no determination of the necessity for foster care until the November 13, 2014, order; as such, the first order pertaining to removal into foster care contained the requisite language for Title IV-E eligibility.

Lastly, defendant cites the following additional question and answer from the manual:

**Question 2**.

If a temporary detention order states that the child is to be detained until sentencing because there is a reason to believe that he would run away, would this satisfy the requirement for a determination regarding "contrary to the welfare?"

-11-

**Answer**

No. This language could not be construed to mean that to continue in the home would be "contrary to the (child's) welfare." It is important to remember that the judicial determinations required for title IV-E eligibility were intended to ensure that children were not removed from their homes unnecessarily. In juvenile justice procedures, where children are removed for correctional purposes, the courts must determine that continuation in the home would be contrary to the child's welfare if title IV-E eligibility is to be established. [*Id*. at § 8.3A.1.]

This answer merely states that a child's being at risk of running away is insufficient to meet the "contrary to the welfare" requirement. In the present case, Judge Vollbach explicitly found that it would be contrary to plaintiff's welfare to be returned home, and he made this finding in the first order pertaining to plaintiff's removal *into foster care*.

The statutory scheme and agency interpretations align with the ruling of the trial court, and we do not find defendant's arguments to the contrary persuasive.

Affirmed.

/s/ Patrick M. Meter
/s/ Kirsten Frank Kelly
/s/ Elizabeth L. Gleicher

-12-